Martin v. Blattner et al.

MARTIN v. BLATTNER ET AL.

1. **Intoxicating Liquors**: OWNERSHIP OF SALOON: EVIDENCE. The evidence (see opinion) *held* sufficient to justify the trial court in finding that one of the defendants was interested as proprietor of the saloon in question.

2. ———: NUISANCE: INJUNCTION: PARTIES: LESSOR OF SALOON BUILD-ING. The lessor of a building used as a place for the unlawful sale of intoxicating liquors becomes an aider and abettor in violating the law, and he is a proper party to proceedings by injunction to restrain the unlawful traffic as a nuisance. This point was affirmed on a rehearing.

3. ———: ———: ———: CONSTITUTIONALITY OF STATUTE. *Littleton v. Fritz*, 65 Iowa, 488, followed.

4. ———: ———: ———: ———. Chap. 143, Laws of 1884, is not repug-nant to § 29 of article 3, of the constitution, which provides that "every act shall embrace but one subject, and matters properly connected there-with, which subject shall be expressed in the title," nor is it in conflict with § 6 of article 1, which declares that "all laws of a general nature shall have a uniform operation."

5. ———: ———: ———: FORMER ACQUITTAL ON CRIMINAL CHARGE. An adjudication upon information that defendant was not guilty of the crime of selling intoxicating liquors contrary to law is not an adjudica-tion that he is not maintaining a nuisance, and is not a bar to proceed-ings by injunction to restrain him from continuing it.

6. ———: ———: ———: CONSTITUTIONALITY OF STATUTE. Chapter 143, Laws of 1884, is not repugnant to § 23 of article 1 of the constitu-tion, which forbids involuntary servitude except for the punishment of

crime, in that the said statute provides for the imprisonment of persons guilty of contempt in violating an injunction; nor are the fines provided by said chapter "excessive" within the meaning of § 17 of article 1 of the constitution; nor is said statute in conflict with the fourteenth amendment to the constitution of the United States, on the ground that it abridges the privileges of the citizens of the United States.

*Appeal from Mahaska Circuit Court.*

WEDNESDAY, MARCH 17.

THE plaintiff brought this suit in chancery under Code, § 1543, as amended by chapter 143 of the Acts of the Twentieth General Assembly, to restrain the defendants and another from maintaining a nuisance by keeping a place for the unlawful sale of intoxicating liquors. A preliminary injunction was allowed. Defendants, C. Blattner and Gibbs, appeal.

*John F. Lacy, Bolton & McCoy, J. C. Williams* and *Phillips & Greer*, for appellants.

*Gleason & Haskell*, for appellee.

BECK, J.—I. The original petition contains sufficient averments, charging that Charles and Fred Blattner maintained a nuisance by keeping a place for the unlawful sale of intoxicating liquors. Fred, by his answer, not under oath, denies the allegations. Charles, in a verified answer, makes a like denial, and pleads that the statute under which the proceeding is instituted is unconstitutional, and that the action is barred by reason of the fact that he was adjudged not guilty in two separate criminal proceedings wherein he was charged with violating the statute prohibiting the sale of intoxicating liquors. In an amended petition it is alleged that Gibbs is the owner of the premises wherein the unlawful sales of intoxicating liquors were made, and that the other defendants are his lessees. Gibbs, in his answer, admits that

he owns the premises in question, and alleges that he leased them October 1, 1883, for the term of three years. He does not state to whom the lease was made, nor its terms, nor for what purposes the premises were leased. He alleges that the statute under which the proceedings are had is in conflict with the constitution of the United States, and that the plaintiff has a plain, speedy and adequate remedy at law. The allegations of the petition were supported by certain affidavits filed by plaintiff. Upon the pleadings and proof the circuit court ordered that an injunction issue restraining all of the defendants "from keeping and maintaining a nuisance, and from selling intoxicating liquors, or keeping the same for sale and from permitting the same to be kept or sold or drank in or on" the premises in question, properly describing them. Charles Blattner and Gibbs appeal, and present various objections to the decision of the circuit court, which we will proceed to consider.

II. It is insisted that, as it is alleged in the answer of Charles Blattner, and shown by the affidavits of himself and Fred, that he had no interest in the saloon, and was not concerned in keeping it, the injunction should not have been allowed as against him. We think the proof sufficiently shows that he was concerned in the saloon. It is not denied that he had been at one time interested in and an owner of the saloon, and it is not shown that he had parted with his interest in it. The proof shows that he was regarded as the owner by those who patronized the saloon, and that he was, by at least one witness, seen there exercising the authority of an owner, and claiming certain property found there. The circuit court had ample ground to hold that he was concerned in the violation of the law by the sale of intoxicating liquors at the place described in the petition.

1. INTOXI-CATING liquors: ownership of saloon: evidence.

III. It is next insisted that Gibbs, being the lessor of the premises in which the law was violated, cannot be reached

Martin v. Blattner et al.

2. ——: nuisance: injunction: parties: lessor of saloon building. by an injunction. We think the consideration of some familiar principles of the law and provisions of the statute will establish the contrary conclusion. Under the statute real estate used with the knowledge or consent of the owners for unlawful traffic in intoxicating liquors is subject to a lien for all judgments rendered for fines and penalties provided for the violation of the law by such traffic. Code, § 1558. And the building, without regard to its ownership, in which such traffic is carried on is declared to be a nuisance. Code, § 1543. It is a well-settled rule of the law that all property of the citizen is held subject to such police and other regulations as the legislature may provide for the protection of the health and safety of the people, and that no right of property can intervene to arrest the enforcement of penalties for the violation of the criminal statutes of the state. The welfare of the people in their health, property and lives is above the rights of the individual citizen. When the state, in the exercise of its sovereign authority, declares that an act is unlawful, no citizen may disobey such a statute for the reason that the act was before the legislation lawful, and that he held property exclusively used in the commission of the act. A contrary rule would arrest progress by legislation in efforts to suppress vice and crime. The owner of property cannot by leasing it remove it from the operation of these principles. His lease, being in conflict with the law, is void; he cannot plead it as an instrument which sanctifies crime and the violation of law. By the violation of the law the lease ceases to be of force, and it becomes the duty of the lessor to exercise the right which he possesses to oust the lessee from the possession of the premises unless he ceases to violate the law. Without special reference to the numerous authorities supporting these views, it is sufficient to refer to the following of that class: Cooley, Const. Lim., 583; *People v. Hawley*, 3 Mich., 330; *Reynolds v. Geary*, 26 Conn., 179; *Brick Presbyterian Church v. Mayor*, etc., 5 Cow., 538.

The defendant Gibbs, having leased the property to the vendor of liquors forbidden by the statute, and refusing to exercise his right and authority to forbid the traffic, and to oust the violator of the law from his land, becomes an aider and abetter of the violator of the law. And his abetting of the crime becomes active when he comes into a court of justice and contends with the other violators of the law for its defeat, and the criminals escape from the penalties and remedies provided for suppressing the crimes in which they are engaged. We are of the opinion that he is a proper party to the action, and the court rightly restrained him from permitting the unlawful traffic, which he was doing by failing to declare his lease void and to oust the vendor of intoxicating liquors from the possession of the property.

IV. Counsel for defendant insist that the statute under which this suit is prosecuted is in conflict with the constitution upon several grounds. The first, as we understand them, is that the statute deprives the defendants of a trial by jury. This objection was fully considered in *Littleton v. Fritz*, 65 Iowa, 488, after careful and thorough argument, and it was again recently argued upon a petition for rehearing. We have an abiding confidence in the correctness of our decision in that case, and deem it useless to repeat the satisfactory argument upon which it is supported.

3. ——: ——: constitutionality of statute.

V. Counsel contend that the act of the Twentieth General Assembly (chapter 143) is repugnant to section 29 of article 3 of the constitution, which provides that every statute shall embrace but one subject, and matters properly connected therewith, which shall be expressed in its title. This act is amendatory of prior legislation intended for the suppression of the traffic in intoxicating liquors. The act provides for additional penalties and remedies against the violators of the statute. The subject of the statute is the prohibition of the sale of intoxicating liquors. Remedies by injunction and additional or enlarged penalties are matters

4. ——: ——: ——: ——:

connected with this subject. We think all the provisions found in the act are within the purview of the subject, or are matters connected therewith. The point demands no further attention.

VI. It is next argued that the statute is in conflict with section 6 of article 1, which declares that "all laws of a general nature shall have a uniform operation." It THE SAME. is insisted that the provision of the statute prescribing the remedy by injunction, and the punishment of those committing contempts by disobedience thereto, is special, and does not have a general operation. This provision pertains to the sanction of the statute, and the remedy for its violation by the commission of crime forbidden by it. All statutes punishing criminally the violation of the law, or providing for the prevention of crimes, are special in their characters, just as this statute is, and they could not be otherwise.

It would be absurd to claim that all felonies should be punished to the same extent, or in the same manner, or that even degrees of the same offense should have affixed to them by the statute the same punishment. And it would not for a moment be claimed that the same proceedings and remedies should be provided for all violations of the law; that homicides, larceny, vagrancy, breaches of the peace, and the prevention of crimes should all be subject to the same proceedings, and that no special provisions should exist in one case unless made applicable to all. To the law-making department of the government is confided the duty of providing enactments for the punishment and prevention of crimes. In the exercise of the widsom gained by experience in the administration of the law in a land of constitutional liberty, the general assembly discovered that the provision in question is required in order to enforce the statute it enacted. The same legislative wisdom discovered no necessity for the provision to be made applicable to other nuisances, or to other offenses. The remedy and penalties prescribed in the statute were therefore limited to nuisances committed by the sale of

intoxicating liquors, and they were extended to no other class of offenses. The statute is in no sense within the constitutional provision just quoted.

VII.  The defendant Charles Blattner was tried before a justice of the peace for an offense in violating the provisions of the statute prohibiting the sale of intoxicating liquors, and was acquitted.  He now insists that the judgment in that case is a bar to this proceeding.  An adjudication that defendant was not guilty of an offense punishable upon information filed before a justice of the peace cannot be an adjudication that he was not maintaining a nuisance.  That was a proceeding to inflict punishment for an offense.  This is an action in chancery to restrain acts which the statute declares are a nuisance.  The proceedings in these cases are unlike, their purposes are not the same, and the judgments entered in them are not alike.  A judgment in one action will not bar the other.  To claim otherwise is as unreasonable as to insist that a judgment in an action of forcible entry and detainer would bar an action of ejectment for the same lands, or that an acquittal on a charge for assault and battery would bar a proceeding to require the accused to enter into bonds to keep the peace.

*5. ——: ——: ——: former acquittal on criminal charge.*

VIII.  It is next insisted that the statute in providing a penalty for disobedience of an injunction is in conflict with article 1, section 23 of the constitution, which provides that there shall be no involuntary servitude except for the punishment of crime.  It is impossible to discover reasons for holding that an imprisonment for a contempt is a *servitude.*  If counsel's position be correct, all commitments for contempt are forbidden by the constitution.  We think counsel are not prepared to go that far; we certainly are not.

*THE SAME.*

IX.  It is next said that the fines provided for in the statute are excessive, and it is therefore in conflict with section 17 of article 1 of the constitution.  We do not concur in the position.  We think that there is

*THE SAME.*

no ground for holding that the statute in this regard conflicts with the constitution.

X. Counsel urge that the statute is in conflict with the fourteenth amendment to the constitution of the United States, for the reason that it abridges the privilege of the citizens of the United States. It has been held in numerous cases decided by this court, and by the courts of other states, that statutes prohibiting the traffic in intoxicating liquors are within the police authority of the state. All privileges of citizens of the United States are held subject to this power. This amendment was not intended to limit this power of the states. This conclusion is not only supported by principle, but also by the familiar political history of the constitutional amendment in question.

THE SAME.

The foregoing discussion disposes of all questions considered by counsel. The decision of the circuit court is

AFFIRMED.

ON REHEARING.

SEEVERS, J.—It must be assumed that Mr. Gibbs leased the premises for a lawful purpose, and that he did not have any knowledge, at the time the injunction was asked, that his tenants had committed a statutory nuisance thereon by selling intoxicating liquors contrary to law. This being so, a petition for a rehearing has been filed upon the ground that a landlord cannot be made liable for a nuisance created by his tenant of which he has no knowledge. Authorities are cited in support of this doctrine, and we think, in a certain sense, it is undoubtedly true. Cooley, Torts, 608–612; Woods, Landl. & Ten., § 539. An examination of these authorities, and all others cited in notes therein, will demonstrate that the doctrine above stated has been established in actions to recover damages for the erection or continuance of private nuisances. In such cases it has been generally held that a landlord is not liable in damages that have been caused by nuisances created by his tenant, of which the

SAME AS NO. 2, ante.

landlord has no knowledge.   This case is materially different. In the first place, this is a public nuisance, although the action is brought by a private citizen under a statute which authorizes him to bring this action.   In the second place, it is not sought to recover damages for the past, but the sole object of the action is to restrain and prevent the nuisance in the future.   When Mr. Gibbs was made a party to the action, he obtained knowledge that it was claimed and charged that his tenants had been using the leased premises as a place for the sale of intoxicating liquors, thereby creating a public nuisance, and therefore he, as the owner of the premises, or, rather, his property, under the statute, would become liable as therein provided.   This, at least, should be regarded as sufficient to put him on inquiry as to the truth of the matter charged.   Not only so, but, as he was made a party and appeared in the action, he is chargeable with such knowledge, in relation to the existence of the nuisance as was established by the evidence introduced on the trial.   The court found and determined that a nuisance existed, and, until this determination was reversed or set aside in a lawful manner, it must be regarded as conclusive evidence of the existence of the nuisance, as against, not only the lessees, but also as to the landlord.

The statute provides that the "building or erection, of whatever kind, or the ground itself in or upon which such unlawful manufacture or sale, or keeping with intent to sell, *    *    *        any intoxicating liquors, is carried on, *    *    *        is hereby declared a nuisance, and shall be abated as hereinafter provided.        *    *    *        Any citizen of the county where such nuisance exists `    *    * *        may maintain an action in equity to abate and perpetually enjoin the same."   Chapter 143 of the Acts of the Twentieth General Assembly;   Miller's Code, 411.   Under this statute it seems to us that the building becomes a nuisance, and that its continuance as such may be enjoined and

Martin v. Blattner et al.

prevented. Such is, as we understand, the plain import of the statute.

As we have seen, Mr. Gibbs obtained knowledge at the trial that his building was, under the statute, a public nuisance, and that a citizen acting for the public asked that it be enjoined. It seems to us clear that such a remedy existed as against him and his building. The statute, in express terms, so provides, and the court was bound to grant the relief asked. We affirm the proposition to be true, upon principle, that no one can use his property, or permit it to be used by another, so as to create a public nuisance. The right of the public in this respect is superior to that of the individual. The property of the latter must be held in subordination to the rights of the general public. The health and morals of the community so require. The existence of the nuisance having been conclusively established as between the parties to this action, and between each of them, by the judgment of the court, it necessarily follows that the tenants cannot continue the business, or do the thing which created it, in the leased premises. The premises may continue to be occupied by them for lawful purposes, and the lease may continue to exist. Clearly, however, in our judgment, Mr. Gibbs can protect himself and his premises from being a public nuisance, and to that end he may have the power to cancel the lease, or enjoin the unlawful use. We however, do not regard it as essential to determine this question. The petition for rehearing is

OVERRULED.