STATE, EX REL. JAMES P. ENGLISH, COUNTY ATTORNEY, APPELLEE, V. CHARLES E. FANNING ET AL., APPELLANTS.*

FILED MAY 4, 1914.   No. 17,670.

1. Nuisance: DECREE: CONCLUSIVENESS. Where a decree was rendered under sections 8775-8782, Rev. St. 1913, declaring certain property a public nuisance, and enjoining the owner and occupant thereof from further illegal acts, and no appeal is taken therefrom, upon appeal from further provisions of the decree ordering the furniture, etc., removed and the building effectually closed for a year, that portion of the decree not appealed from is a final adjudication as to the existence of the nuisance.

2. ———: SUIT TO ABATE: PARTIES. In a proceeding for an injunction and to abate a nuisance under said sections, where it is shown that persons not parties to the suit are the owners of the furniture in the building, the court is without jurisdiction to order the furniture to be removed and sold. In such a case the owners of the property sought to be seized should be made parties defendant to the action.

3. Constitutional Law: STATUTE FOR ABATEMENT OF NUISANCE. The provisions of the statute declaring that the owner or lessee of any building used for the purpose of lewdness, assignation or prostitution is guilty of a nuisance, and that the building and the furniture, fixtures, etc., contained therein also constitute a nuisance, providing for an injunction against the continuance of the same and for the abatement of the nuisance, are not in conflict with the constitution of the United States or the constitution of this state.

4. ———: ———. Section 8782, providing for the assessment of a tax of $300 against the property, and against the persons maintaining the nuisance, and the payment of a portion of the tax to the attorney prosecuting the action, violates section 1, art. IX of the constitution, and section 5, art. VIII thereof. It is, therefore, void and incapable of enforcement. This section, however, was not an inducement to the passage of the act, and its elimination in no wise affects its validity.

5. Nuisance: SUIT TO ABATE: PARTIES. The right to bring an action to abate a public nuisance may be conferred upon private individuals by the legislature.

6. ———: ———: BOND. Construing sections 8779 and 8781 together, it is *held* that it is the intention of the law that a building declared to be a nuisance shall be closed effectually for all purposes, unless a bond to release the same is given as provided in section 8781.

*Reversed on rehearing. See opinion, 97 Neb. —.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed in part and reversed in part.*

*I. J. Dunn,* for appellants.

*George A. Magney* and *Charles Haffke, contra.*

LETTON, J.

Action for an injunction and to abate a nuisance, brought under the provisions of chapter 63, laws 1911 (Rev. St. 1913, secs. 8775-8782), commonly known as the "Albert Law."

The petition alleged that defendant Fanning owned and defendant Prenica was the lessee of a three-story brick building in Omaha, known as the Oma Hotel, and that the "said building is now, and for some time has been, used by said defendant Louis W. Prenica for the purpose of lewdness, assignation and prostitution." The prayer is that the defendants be perpetually enjoined from using or leasing the property for such purposes and that the nuisance be abated. The answer of Prenica is a general denial of the facts alleged in the petition, and averments that the affidavits attached thereto making specific charges of lewdness were made by the paid agents of persons engaged in a conspiracy to injure the business of the hotel, and were false and untrue. The answer of Fanning admits that he is the owner of the real estate, denies each allegation of the petition, and pleads that the law under which it is sought to maintain the action is unconstitutional. After a hearing the court found that Fanning was the owner and Prenica the manager of the hotel, that the building was used for the purpose of lewdness, assignation and prostitution; declared the real estate and building to be a nuisance which ought to be enjoined and abated; found that the fixtures, furniture and other movable property are not the property of defendants or either of them, but that the same should be removed from the building, and "said building closed against its use for a period of one year, unless sooner released." The decree

enjoined defendants from using the building or permit-
ting its use for such purposes, and ordered that the fix-
tures, furniture and movable property be removed from
the premises, and the building be closed and kept closed for
one year, unless sooner released.    At the request of de-
fendants that portion of the decree providing that the fur-
niture, fixtures and other property used in conducting the
hotel be removed from the premises, and the building be
closed and kept closed for a period of one year, was su-
perseded upon their giving a bond for an appeal there-
from, and is now before us for review.    That portion which
enjoins Fanning and Prenica from using the premises for
the purpose of lewdness, assignation or prostitution is not
appealed from, and is therefore final.

The evidence as to the hotel having an evil reputation
was conflicting.    The fact that persons living in the im-
mediate vicinity saw nothing out of the way and never
heard anything against the reputation of the hotel must
be taken in connection with the cross-examination of the
state's witnesses, which indicated that rumors of the same
nature were rife in Omaha with respect to the reputation
of nearly every other hotel in the city.    Whatever the ac-
tual fact may be, the testimony in the record upon this
point, standing alone, would not justify an order declar-
ing the hotel to be a nuisance.    The evidence which we
think justified the issuance of the injunction was fur-
nished in the main by paid decoys or informers hired by
the superintendent of the anti-saloon league, and it is
urged that it was procured by means of money furnished
by a conspiracy to injure the business of the hotel.    How-
ever, it is worthy of remark that the defendants make no
complaint of the findings and decree so far as it finds that
unlawful practices were indulged in and enjoins the con-
tinuance of the same in the future.    Moreover, if the un-
lawful nuisance actually existed, the motives of the com-
plainant are not material, though they might seriously
affect the credibility of his or their testimony as wit-
nesses.    A recital of the details of the reprehensible meth-
ods employed by these agents is unnecessary, and will not

be made. The hotel contains about 100 guest rooms, and there are usually about 35 permanent occupants of rooms and from 30 to 50 transients in the building. It is not shown that any improper conduct took place except in one or two rooms and at long intervals, though there is enough shown to justify the belief that sufficient care and diligence was not exercised by the management to prevent questionable characters from occupying rooms.

The first question is whether that portion of the decree ordering the furniture, etc., removed and sold is erroneous. The evidence shows that the building was leased to the Chesapeake Restaurant Corporation, and the furniture was owned and the business conducted by it, and that Prenica was merely the manager of the hotel, although he was a stockholder and had been secretary of the corporation. The lessee of the hotel and the owner of the furniture should have been made a party to the suit, so that the rights of all parties interested could have been adjudicated.

Section 8779, Rev. St. 1913, provides for the seizure and sale, as under execution, of all fixtures, furniture and movable property used in conducting the nuisance. Section 8780 provides that, after the costs of the action and abatement are paid from the proceeds of the sale, the balance, if any, shall be paid to the *defendant*. There is a clear implication here that the owners of the property should, whenever practicable, be made a party defendant to the action. The principle which allows the seizure and destruction or sale of property used for an unlawful purpose cannot be applied in such a case as this, where the property which may have been used for such purpose is not identified, and where, if so used, it has in all probability constituted an exceedingly small proportion of the total mass. The case is different than if it were the furniture, fixtures and musical instruments of an ordinary bawdy or assignation house, where it would seem apparent that the main and almost the only purpose of the property was to carry out the illegal purpose in which case the legal principle mentioned might perhaps apply. A similar ques-

tion came before the courts of Iowa, whence the procedural provisions of this statute evidently were taken, and it was held that the property of persons not parties to the suit could not be disposed of in this manner. *Danner v. Hotz,* 74 Ia. 389; *Shear v. Green,* 73 Ia. 688.

Under the evidence before us, we are of opinion that the owner of this movable property is entitled, as a constitutional right, to its day in court before its property can be seized, removed and sold and that the judgment of the district court in this respect is erroneous.

Coming now to the complaint of the owner of the building as to the order directing the building to be closed and kept closed for one year, unless sooner released. It is urged that the law is unconstitutional and void for a number of reasons assigned; among others, that it deprives a citizen of his property without trial by jury, and without due process of law, and is a denial of the equal protection of the law. The powers of a court of equity to abate nuisances and to deprive persons of property used in the perpetration thereof have existed for centuries, and have been exercised in this state since its organization. Before the enactment of the statute under which these proceedings are brought, this power was exerted in the case of *Seifert v. Dillon,* 83 Neb. 322, to close up a bawdy house as a nuisance, and to prevent its use for such purpose in the future. The provisions of the bill of rights with respect to trial by jury have no application to remedies in courts of equity existing at the time of its adoption. *Littleton v. Fritz,* 65 Ia. 488, and in such cases due process of law is observed by using the equitable remedies existing concurrent with the strictly legal one of trial by jury, or those provided by statute law which afford notice and an opportunity to defend. The principal features of this law have evidently been derived from the statute of the state of Iowa providing for the suppression of the illegal traffic in intoxicating liquors by treating the occupation, the building in which it is conducted, and the furniture, fixtures and movable property used in the business as a nuisance. This statute has been attacked before the courts

of that state upon the same grounds as are urged here, and has uniformly been sustained. *Littleton v. Fritz*, 65 Ia. 488; *Martin v. Blattner*, 68 Ia. 286; *State v. Jordan*, 72 Ia. 377.

It is further urged that the act is unconstitutional on account of the inclusion of section 8782, providing for the assessment of a tax of $300 against the property and the ground upon which the same is located, and against the person maintaining the nuisance and the owner or agent of the premises, and the payment of a portion of the tax to the attorney prosecuting the action. This section is a clear and palpable violation of section 1, art. IX of the constitution, and section 5, art. VIII, as well probably as of other provisions of the same instrument, and is void and incapable of enforcement. However, the deletion of this section in nowise affects the enforcement of the main provisions of the act, and it could not have been the inducement to its passage. The act may stand notwithstanding the invalidity of this section.

The right of the state to authorize such an action to be brought is also assailed. We are of opinion that the right to bring an action to abate a public nuisance may be conferred upon a private individual, in addition to his existing right to bring such actions where there is a special injury to him in addition to that suffered by the public at large. This point has also been considered and determined by the Iowa court.

In the other respects upon which the act is assailed, we find no violation of any constitutional provision. It is contended that the building may not be closed for all purposes under the provisions of the statute, but only for the purposes named and prohibited. The language of the statute is ambiguous, and, were it not for the provisions of section 8781 as to giving bond and procuring a release, we would hold that section 8779 did not warrant such a decree as rendered. But the supreme court of Iowa construed these provisions before the act was adopted by this state, and held that the intention of the law was to close the building effectually, unless a bond was given, and that

a decree allowing it to be used for other purposes was erroneous. *McCoy v. Clark,* 109 Ia. 464. This construction will be adopted here under settled principles of statutory construction.

Do the facts warrant the decree closing the building unless the bond is filed? That portion of the decree which declared the property to be a public nuisance and enjoined the owner and occupant from further illegal acts was not appealed from. There is therefore a final adjudication that the building is a public nuisance. Mr. Fanning testifies that he had no knowledge of any illegal acts, and had only been in the building once or twice since he purchased it, and then only to see about repairs. If knowledge and either active or tacit consent to the illegal use of the building is necessary to justify a decree closing a building, then the decree in this respect is erroneous. This question also has arisen in Iowa. As we understand the cases of *Martin v. Blattner, supra,* and *Morgan v. Koestner,* 83 Ia. 134, that court held that, under such a state of facts, the unlawful use of the building in which the illegal practices are carried on constitute it a public nuisance which the court should abate, even though the evidence as to the lack of knowledge on the part of the owner is such that it does not warrant an injunction or a judgment for costs against him. Of course, the owner by giving bond may procure its release at once, as provided by section 8781. The granting of the temporary injunction was notice to defendant Fanning that illegal practices were charged to be carried on in the building. The owner should then have taken steps to abate the nuisance, or at least to determine by legal proceedings whether the terms of his lease were being violated; failing this, he accepted as an alternative the contingency of having the building declared a nuisance and being compelled to give the statutory bond for its release.

It is impossible to separate the building into parts and to segregate one portion as that in which the nuisance existed. This being so, the only method to abate the same

was to declare the whole of the premises a public nuisance and abate the same by the decree. *Carter v. Bartel*, 110 Ia. 211.

The judgment of the district court is reversed as to the order removing the contents of the building, and affirmed as to the remainder of the decree.

JUDGMENT ACCORDINGLY.