[Civ. No. 3215.  First Appellate District, Division One.—January 12, 1920.]

THE PEOPLE, Respondent, v. MRS. J. A. PETERSON et al., Appellants.

[1] REDLIGHT ABATEMENT ACT—ACTION TO ABATE NUISANCE—KNOWLEDGE BY OWNERS—PLEADING.—In an action against the lessee and the owners of a building charging the lessee with committing a nuisance in said building in violation of the provisions of the "Redlight Abatement Act," it is sufficient to allege that the owners "had the means of knowing and should have known, and by the use of reasonable and ordinary care could have known," that the building is and was "used for the purpose of lewdness, assignation and prostitution," without alleging that such owners, either directly or indirectly, permitted or maintained the nuisance complained of.

[2] ID.—COMMISSION OF NUISANCE BY LESSEE—FINDINGS—JUDGMENT. In such action, the court having found that the acts of the lessee complained of constituted a nuisance and that the owners "had the means of knowing and should have known, and by the use of reasonable and ordinary care could have known, that acts of lewdness and prostitution were occurring in said building," was authorized by the act to perpetually enjoin all the defendants from permitting the same to continue, to order the building closed for one year and the furnishings therein sold, without having found either that the owners threatened, and unless restrained, would continue to maintain, aid, and abet, the nuisance, or that they knew the building was used in violation of the act.

[3] ID.—RIGHT TO JURY TRIAL.—An action under the Redlight Abatement Act, being an equitable proceeding to abate a nuisance, the right to a jury trial does not exist.

APPEAL from a judgment of the Superior Court of San Bernardino County.  H. T. Dewhirst, Judge.  Affirmed.

The facts are stated in the opinion of the court.

C. C. Haskell for Appellants.

T. W. Duckworth and M. O. Hert for Respondent.

3.  Right to jury trial as to existence of, and damages for, nuisance, note, 3 Ann. Cas. 1043.

WASTE, P. J.—The district attorney of San Bernardino County instituted this action against Mrs. J. A. Peterson, lessee of the Monte Vista hotel and rooming-house and R. F. Drew and the Andreson Company, owners of the building, charging the defendant, Mrs. Peterson, with committing a nuisance in said building in violation of the provisions of the "Redlight Abatement Act." (Stats. 1913, p. 20.) The owners of the building appeared separately from the other defendants, and interposed a demurrer to the complaint, which was overruled. They thereupon answered, admitting ownership of the building, but substantially denying every other allegation of the complaint, especially in so far as the existence of any nuisance was concerned. At the proper time Drew and the Andreson Company demanded that the cause be tried by a jury, which was refused.

By the judgment, the trial court found that the acts complained of constituted a nuisance, perpetually enjoined all the defendants from permitting the same to continue, ordered the third story of the building closed for one year, and the furnishings therein sold, unless released by the owners giving bond in the sum of five thousand dollars. Costs were awarded to the plaintiff. From this judgment the owners of the building appeal, seeking a reversal upon three grounds.

[1] It is first contended that the trial court committed an error of law in overruling the demurrer, in that it nowhere appears in the complaint that the owners of the rooming-house at any time, either directly or indirectly, permitted or maintained the nuisance complained of. After specific allegations describing the building definitely, and setting out the nature of the acts committed therein, the complaint contains this averment:

"That said building now is, and at all times herein mentioned was, used by the defendant Mrs. J. A. Peterson and by divers persons unknown to this plaintiff for the purpose of lewdness, assignation and prostitution, and that at all times herein mentioned the defendants R. F. Drew and the Andreson Company had the means of knowing and should have known, and by use of reasonable and ordinary care could have known, and in fact well knew that the said

building now is and at all times herein mentioned was used for the purpose of lewdness, assignation and prostitution."

Appellants argue that "it is not enough to allege in the complaint that the owner of leased property had either knowledge, or means of knowledge, of the nuisance in order to hold him subject to an injunction under the 'Redlight Abatement Act'; it must be alleged that he either permits or maintains the nuisance." The allegation avers actual knowledge on the part of appellants. However, the precise question raised by them has been well considered by the appellate court of this state. In *People* v. *Barbiere*, 33 Cal. App. 770, [166 Pac. 812], the district court of appeal of the third appellate district in an elaborate discussion of the whole subject matter covered by the "Redlight Abatement Act" first discussed the question. Later this court, in *People* v. *Casa Company*, 35 Cal. App. 194, [169 Pac. 454], after a careful re-examination of the same matter, said, in an opinion written by Mr. Presiding Justice Lennon: "This point and the other points raised on this appeal are fully discussed, and decided adversely to appellant's contention in a recent decision of the appellate court of the third district, in the case of *People* v. *Barbiere*, 33 Cal. App. 770, [166 Pac. 812], and we are satisfied with the reasoning of, and the conclusion arrived at by Mr. Justice Hart in that case, and concurred in by his associates."

A petition to have the last-named cause heard in the supreme court was denied. The supreme court, and the district court of appeal, considered the act in *Selowsky* v. *Superior Court*, 180 Cal. 404, [181 Pac. 652], 38 Cal. App. 509, [177 Pac. 301]. For the reasons stated in those opinions we are satisfied that the demurrer to the complaint was properly overruled.

The finding of the lower court as to the knowledge had by the owners as to the maintenance of the nuisance on these premises is: "that R. F. Drew and Andreson Company, a corporation, had the means of knowing and should have known, and by the use of reasonable and ordinary care could have known, that acts of lewdness and prostitution were occurring in said building."

[2] Appellants contend, therefore, that the judgment is not supported, in so far as it runs against the owners of the building and their property. There is no merit in

the contention. The statute provides that the proceeding shall be "an action in equity to abate and prevent such nuisance and to perpetually enjoin the person or persons conducting or maintaining the same, and the owner, lessee, or agent of the building, or place, in or upon which such nuisance exists, from directly or indirectly maintaining or permitting such nuisance." The precise point, among others, was directly passed upon in *People* v. *Barbiere, supra,* where, at page 779, the court said: "If, therefore, a building or other property is so used as to make it a nuisance under the statute, the nuisance may be abated and the property, if personal, confiscated, and if real, subjected to the consequences of reasonable forfeitures, notwithstanding that the owner had no knowledge that it was used for the unlawful purpose constituting a nuisance. (Citing cases.) But it has been held that 'the owner of property is presumed to know the business conducted thereon.' " (Citing cases.)

Therefore, it was not necessary, as contended by appellant, for the trial court to find either, that the appellants threatened, and unless restrained, would continue to maintain, aid; and abet, the nuisance, or that they knew the building was used in violation of the act. The issues raised by the allegation and denials as to those matters were immaterial under the statute. "If the existence of the nuisance be established in an action, as provided" therein, the parties and their property are subjected to the provision of the act. The existence of the nuisance was the ultimate fact in this case, and having been found, supports the judgment.

If it be argued that the judgment permitted by the statute is too broad in its scope, if it includes an injunction against the nonconsenting owners maintaining the nuisance on their premises, the answer may be found in the language of the court in *People* v. *Dillman,* 37 Cal. App. 415, [174 Pac. 951], in which case an injunction, but no abatement order, was granted. The court there said: "The effect of the decree is merely to prevent the defendants from using the building as a place for the commission of unlawful acts, or, expressing the proposition in another form of language, the effect of the decree is only to require the defendants to obey a legislative mandate, viz., not to use

their property or permit it to be used for the purposes of prostitution or other like acts of immorality. It adjudges nothing as against the defendants which is not a duty, *per se,* resting upon all the people of the state, . . ."

It was pointed out in *Selowsky* v. *Superior Court, supra,* that the injunctive relief, permitted by the statute, may be granted to prevent anyone from maintaining the nuisance, whether owner or tenant. The abatement order is a remedy only against the owner's property. If the owner acquiesces in the order and is guilty of no contempt, he may, by filing a bond, stay the abatement order, which apparently runs out of itself in a year. As in the case of the injunctive relief, the statute makes no distinction between owners having knowledge of the kind of business conducted on their premises, and those informed. If it did, it would but serve to put a premium upon ignorance in such cases.

[3] Appellant's third, and last, point is that the trial court erred in denying their demand for a jury trial. This point was given full consideration in the Barbiere case, and the court there quoted and approved the language in *State* v. *Fanning,* 96 Neb. 123, 127, [147 N. W. 215], holding that in such cases the right to a jury trial did not exist, the action being an equitable proceeding to abate a nuisance. See, also, *Wilcox* v. *Gilbert,* 126 Minn. 95–103, [147 N. W. 953], where it is said:

"Since, therefore, a review of the act as a whole leads irresistibly to the conclusion that its purpose is repression of the evil, to be worked out by equitable attack upon the property of those engaged in or abetting it, and not punishment of the offenders by infliction of personal penalties, except as for contempt of court, the contention that, because the thing itself—the lewd place—declared a nuisance by the act, would, in its maintenance, have constituted a criminal offense at the time of the adoption of the constitution, a jury trial is indispensable, has no foundation, and is thus answered by the authorities:

" 'The fallacy of the argument lies in part in disregarding the distinction between a proceeding to abate a nuisance, which looks only to the property that in the use made of it constitutes the nuisance, and a proceeding to punish the offender for the crime of maintaining a nuisance. These two proceedings are entirely unlike. The latter is con-

ducted under the provisions of the criminal law, and deals only with the person who has violated the law. The former is governed by the rules which relate to property, and its only connection with persons is through property in which they may be interested. That which is declared by a valid statute to be a nuisance is deemed in law to be a nuisance in fact, and should be dealt with as such. The people, speaking through their representatives, have proclaimed it to be offensive and injurious to the public, and the law will not tolerate it. The fact that keeping a nuisance is a crime does not deprive a court of equity of the power to abate the nuisance.' " (Citing *Carleton* v. *Rugg*, 149 Mass. 550, 553, [14 Am. St. Rep. 446, 5 L. R. A. 193, 22 N. E. 55].)

For the foregoing reasons the judgment is affirmed.

Knight, J., *pro tem.*, and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 11, 1920.

All the Justices concurred.