[Civ. No. 3088. Second Appellate District, Division Two.—June 21, 1920.]

## THE PEOPLE, Respondent, v. BAYSIDE LAND COMPANY (a Corporation), et al., Appellants.

[1] RED-LIGHT ABATEMENT ACT—ABATEMENT OF NUISANCE—SUFFICIENCY OF COMPLAINT.—In an action to abate a nuisance under the provisions of the Red-light Abatement Act, allegations that the defendants have used the premises, "for the purpose of lewdness, assignation, and prostitution," and that on a specified date the premises were occupied by certain named women "as lewd and dissolute persons, and then and there solicited acts of sexual intercourse," are sufficiently clear and explicit to inform the defendants of the character of the charge against the property, and to tender an issue.

---

1. Abatement of or injunction against bawdy-house, note, **L. R. A.** 1918D, 819.

[2] ID.—JUDGMENT—SUFFICIENCY OF FINDINGS—LEWDNESS—ASSIGNA-
TION—PROSTITUTION—SCOPE OF TERMS.—In an action to abate a
nuisance under the provisions of the Red-light Abatement Act,
a finding that the premises were used for purposes of lewdness,
which was permitted and encouraged thereon, is sufficient to sus-
tain a judgment in favor of the plaintiff, notwithstanding it is
also found that no acts of prostitution or assignation were actu-
ally committed on the premises. The words "lewdness," "assigna-
tion" and "prostitution" are not synonymous, the term ."lewdness"
being of much broader significance than the other two words and
including their meaning as well as all other immoral or degenerate
conduct or conversation between persons of opposite sexes.

[3] ID.—CONDUCT OF GUESTS—KNOWLEDGE OF OWNER OR PROPRIETOR.
In an action to abate a nuisance under the provisions of the
Red-light Abatement Act, it is not essential to the right of re-
covery that the owner of the premises or the proprietor of the
business conducted have had actual knowledge of the vicious pro-
pensities and lewd conduct of the guests.

[4] ID.—USE OF PREMISES—KNOWLEDGE OF EMPLOYEE—IMPUTATION
TO PROPRIETOR.—In an action to abate a nuisance under the pro-
visions of the Red-light Abatement Act, the knowledge or gross
negligence of the employees with reference to the use of the
premises must be imputed to the proprietor.

[5] ID.—IMMORAL CONDUCT AT OTHER PLACES—EVIDENCE—HARMLESS
ERROR.—In an action to abate a nuisance under the provisions of
the Red-light Abatement Act, it is error to receive testimony of
acts of prostitution at a neighboring hotel, but such error is with-
out prejudice where there is ample evidence aside from that
erroneously admitted to sustain the findings of the trial court.

APPEAL from a judgment of the Superior Court of
Orange County. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bordwell & Mathews for Appellant Bayside Land Com-
pany.

G. M. Spicer for Appellant Louie White.

L. A. West, District Attorney, and W. F. Menton and
Alex P. Nelson, Deputies District Attorney, for Respondent.

WELLER, J.—Action to abate a nuisance under the pro-
visions of the Red-light Abatement Act, [Stats. 1913, p. 20].
The court rendered judgment in favor of plaintiff, ordered

the building closed for the period of one year, and directed the personal property located therein to be sold and applied as provided in the act.

Separate appeals were taken by Louie White, the proprietor of the place and owner of the furniture, and by Bayside Land Company, the owner of the real property and building. For convenience, these appeals will be considered together.

[1] The complaint alleges that defendants "have used said premises, said building, the furniture, fixtures and musical instruments in their possession for the purpose of lewdness, assignation and prostitution, . . . and during all of said times said premises and said cafe in said building has borne the reputation in the community in which it is situated as a house of lewdness, assignation and ill-fame, and a place where lewdness, prostitution and assignation are encouraged and allowed. That on the 30th day of November, 1918, said building and premises were occupied by Beatrice Swanner, Viola Johnson and Irene Fucha as lewd and dissolute persons, and then and there solicited acts of sexual intercourse."

It is claimed that there is "an utter absence of any allegation that any acts of lewdness, prostitution, and assignation occurred on the premises." It was held in *People* v. *Arcega,* 28 Cal. App. Dec. 1188, that the allegation that the building was used for the purpose of prostitution was sufficient. Here we have an additional averment that certain named lewd and dissolute persons occupied the premises and then and there solicited acts of sexual intercourse. We think these allegations sufficiently clear and explicit to inform the defendants of the character of the charge against the property, and to tender an issue.

Counsel indulge in considerable vituperative criticism of the action of the district attorney in employing "stool-pigeons" to obtain evidence in regard to the conduct of the cafe, and cite cases in which the use of such methods has been condemned by the courts. Suffice it to say that in no instance was any of the "soiled doves" decoyed by the "stool-pigeons" into committing any of the many acts of lewdness testified to by the latter on the witness-stand. The investigators related what they saw with reference to the

actions of other guests, and only once did any of them participate in the dissolute practices which were indulged in by the guests of the place, and then only by acquiescence in the proposal of one of the alleged occupants of the building.

[2] The principal contention of appellants appears to be that the decision is not justified by the evidence for the reason that no acts of prostitution or assignation were actually committed on the premises.

The finding on this issue is as follows: "That at all times mentioned in the plaintiff's complaint, the defendant Louis White, whose true name is Louie White, has used the premises and the building thereon located, commonly known as the Tower Cafe, and the furniture, fixtures and musical instruments therein and in his possession and under his control, for the purpose of lewdness, and in conducting a place where lewdness, assignation and prostitution were and are encouraged; that the evidence shows, and the court finds, that no acts of prostitution or assignation were actually committed on said premises; that the building located on the premises hereinbefore described, commonly known as the Tower Cafe, and said premises occupied by him as aforesaid, and the said furniture, fixtures, musical instruments therein were, and now are, by reason of such use, a public nuisance under the statutes of the State of California, known as the Red-light Abatement Act." While the court finds that no acts of *prostitution* or *assignation* were actually committed on the premises, it does find that the premises were used for the purpose of *lewdness,* which was permitted and encouraged thereon.

This finding is challenged as being inconsistent and unjustified. It is insisted that the words "lewdness," "assignation," and "prostitution" are synonymous. With this we cannot agree. Lewdness is of much broader significance than the two other words, and includes their meaning as well as all other immoral or degenerate conduct or conversation between persons of opposite sexes, such as were practiced by the frequenters of the cafe, as related by the witnesses. The lewdness and licentiousness disclosed by the record here as having occurred on the premises is not only disgusting and revolting in itself, but leads inevitably to illicit intercourse, and, undoubtedly, was in the contemplation of the legislature

when it adopted the statute, and was intended to be included within the terms of the act.

[3]   Counsel for both the owner of the premises and the proprietor of the business complain that knowledge of the vicious propensities of the guests was not brought home to either of them, and that, therefore, neither should be made to suffer because of some unknown and unauthorized acts of others.   It is unfortunate that such drastic punishment must be inflicted on the innocent to prevent similar occurrences; but the evil sought to be remedied demands harsh treatment, and the owner whose premises are used for immoral purposes must suffer the consequences.   As was said in *People* v. *Casa Co.*, 35 Cal. App. 194 [169 Pac. 454], the object of the act is not to punish; its purpose is to effect a reformation in the property itself.   Much of the lewd conduct of visitors was committed openly and brazenly, without any attempt at concealment; and it is inconceivable that it should have escaped the eyes of some of the employees of the management.   It is in evidence that one of the waiters, when asked if it was permissible to accost an unattended girl, informed his interrogator that he "might go as far as he liked, so he didn't tip the tables over."   [4]   The knowledge or gross negligence of his employees must be imputed to the proprietor.

[5]   The action of the court in admitting testimony of acts of prostitution at a neighboring hotel is assigned as error.   It appears from the record that a party of some nine persons, among whom were the investigators from the office of the district attorney, were at the Tower Cafe (the premises involved in this suit), and while there made an assignation to repair to the other place where rooms might be obtained, and where, as stated by one of the women, "they could have a real party."   Pursuant to the assignation made on the premises, they did go to the Seal Inn, and there rented rooms, and some of them indulged in lewd acts. Probably the court admitted this testimony for the purpose of ascertaining whether or not the purpose of the assignation so made was consummated.   It was error to receive testimony of conduct elsewhere, but as there was ample evidence aside from that erroneously admitted to sustain the findings, we do not consider that the ruling prejudicially affected the defense.

The act provides that "evidence of the general reputation of the place shall be admissible for the purpose of proving the existence of said nuisance." One witness testified, on cross-examination, to conversations regarding the reputation of the Tower Cafe had with persons residing in Santa Ana, Anaheim, Long Beach, and in the southwest part of Orange County. These places are all within a radius of twenty miles from Seal Beach, and consequently may be said to be in the vicinity of the premises in question. Many of the visitors to this resort came from the places mentioned and would be in a position, from their experiences, to form an opinion as to its character; and from their statements, based on observation, would result the foundation for the reputation of the premises. There were other witnesses who testified to the bad reputation of the place in the city of Seal Beach, where the cafe is situated, which would justify the court in finding that its general reputation was unsavory. As above mentioned, the statements regarding conversations with persons in the other cities mentioned were elicited on cross-examination, and at most would go only to the weight of the testimony of the witness, and not to its admissibility.

Appellants attack the finding that the nuisance was not abated on the 1st of December, 1918, as not justified by the evidence. There is nothing in the record to show that it was managed in any different manner after that date, and the proprietor testified that at the time of the trial it was still being conducted in the same way as before. This was ample justification for the finding.

We have considered all the points urged by appellants, and find no error in the record.

Judgment affirmed.

Finlayson, P. J., and Thomas, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 21, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 19, 1920.

Shaw, J., Lawlor, J., Wilbur, J., Lennon, J., and Olney, J., concurred.