[Civ. No. 13235. Fourth Dist., Div. Two. Oct. 18, 1974.]

PEOPLE ex rel. CECIL HICKS, as District Attorney, et al.,
Plaintiff and Respondent, v.
SARONG GALS et al., Defendants and Appellants.

## Counsel

Hecht, Diamond & Freis and Roger Jon Diamond for Defendants and Appellants.

Cecil Hicks, District Attorney, Michael R. Capizzi and Oretta D. Sears, Deputy District Attorneys, for Plaintiff and Respondent.

## Opinion

KAUFMAN, J.—"Sarong Gals," Seemaygro, Inc. ("Seemaygro") and Norma Groat appeal from a judgment which permanently enjoined them and any other person from maintaining, using or occupying the premises known as Sarong Gals for the purpose of lewdness and which closed the premises to all uses for one year except for uses not involving entertainment or use of a Department of Alcoholic Beverage Control license.

The underlying facts of this case are set forth in our prior opinion, *People* ex rel. *Hicks* v. *Sarong Gals*, 27 Cal.App.3d 46 [103 Cal.Rptr. 414], where we held that the Red Light Abatement Law (Pen. Code, § 11225 et seq.)[1] may be used to abate continuing acts of lewdness sans evidence of prostitution and that the entertainment described in the instant case is lewd and not afforded the protection of freedom of speech under the First Amendment. We thus affirmed the trial court's order denying dissolution of a preliminary injunction, but modified the injunction so as to strike that portion enjoining the defendants from conducting any performance in which the performer's genitalia or anus were visible to any other person under the stricture of *In re Giannini*, 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535].

Norma Groat is the sole shareholder, vice president and secretary of Seemaygro. Seemaygro was the lessee and operator of Sarong Gals, a beer bar licensed by the Department of Alcoholic Beverage Control.[2]

---

[1]Penal Code, section 11225 reads: "Every building or place used for the purpose of illegal gambling as defined by state law or local ordinance, lewdness, assignation, or prostitution, and every building or place in or upon which acts of illegal gambling as defined by state law or local ordinance, lewdness, assignation, or prostitution, are held, or occur, is a nuisance which shall be enjoined, abated and prevented, whether it is a public or private nuisance.

" . . . . . . . . . . . . . . "

[2]Defendant Grover Thompson, the owner of the premises, does not appeal from the judgment.

By stipulation at trial, it was agreed that if certain police officers were called as witnesses, they would testify to the facts contained in affidavits[3] previously filed in support of the request for a preliminary injunction.[4] It was also stipulated that Officer Salazar, a qualified expert, if called as a witness, would testify that the conduct described in the affidavits, taken as a whole, goes substantially beyond the limits of candor of the community of the State of California. It was further stipulated that Dr. Blair McLaughlin, if called as a witness, would testify that the described conduct in his expert opinion is matter in which, taken as a whole, the predominant appeal is to prurient interests, that is, to abnormal interest in sex, nudity and excretion, of the average person in the State of California.

## Contentions

Appellants essentially contend: (1) that there is no evidence to support material findings of fact; (2) that the nuisance was voluntarily abated and that no evidence was presented to establish that the nuisance was continuing at the time the complaint was filed; (3) that the abatement order violates the First Amendment.

## Discussion and Disposition

### I

■ The power of an appellate court, when a finding is attacked on the basis that it is not supported by substantial evidence, is limited to the determination whether there is any substantial evidence to support the finding; the reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. (*Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) All factual matters are viewed most favorably to the prevailing party and in support of the judgment. (*Nestle* v. *City of Santa Monica,* 6 Cal. 3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) All legitimate and reasonable inferences are indulged in to uphold the findings of the trial court. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

■ Appellants argue that no evidence was presented to show that Seemaygro and Norma Groat had personal knowledge of the incidents described in the declarations. This argument tests the credulity of the court. Seemaygro was the lessee of the premises and the operator of

---

[3]The affidavits detailed 46 incidents of lewd entertainment over a period of 9 months.

[4]These facts are reported in *People* ex rel. *Hicks* v. *Sarong Gals, supra,* 27 Cal. App.3d at pp. 48-49.

Sarong Gals. Norma Groat is the sole shareholder of Seemaygro and is also its vice president and secretary. From these circumstances it would be reasonable to infer that Norma Groat and Seemaygro had personal knowledge of the activities taking place upon the premises. Taking judicial notice of the record in the prior appeal (see Evid. Code, §§ 452, 459), appellants admitted in their answer to the complaint that Seemaygro presented nude entertainment at the Sarong Gals. Moreover, a showing of personal knowledge on the part of the owner or operator of the premises is not a prerequisite to relief under the Red Light Abatement Law. (*People v McCaddon*, 48 Cal.App. 790, 792 [192 P. 325]; *People* v. *Bayside Land Co.*, 48 Cal.App. 257, 261 [191 P. 994]; *People* v. *Peterson*, 45 Cal.App. 457 [187 P. 1079].)

Appellants also argue that there was no evidence introduced to show that Norma Groat presented the complained of entertainment. We do not agree. Norma Groat is the sole shareholder of Seemaygro. She is also vice president and secretary. From her position in the company, the trial court could infer that she was in control of Seemaygro, and that the corporate acts of Seemaygro were performed under her direction. Moreover, the People introduced evidence at the trial showing that lewd entertainment was being presented during the time Norma Groat was the active manager of the Sarong Gals.

Appellants further argue that no evidence was presented to support the court's finding that "[t]he common fame and general reputation of the 'Sarong Gals' is that it is a place kept [,] conducted and maintained for the purpose of lewdness and the common fame and general reputation of the occupants thereof and frequenters thereto is that of lewd persons." Although no testimony was presented at the trial as to the common fame and reputation of the Sarong Gals, the trial court could infer from the series of affidavits of the officers relating the activities taking place at the Sarong Gals over a period of months that by common fame and reputation the Sarong Gals is a place maintained for the purpose of lewdness and the occupants and frequenters thereof are lewd persons. Such a showing, however, was not necessary to the judgment. The statute, by its terms, only requires that lewd acts occur on the premises. While the common fame and reputation of the premises may be circumstantial evidence that such acts have occurred, such a showing is not necessary where, as here, numerous specific acts have been documented.

## II

Appellants next contend that the order of abatement was invalid because the nuisance had been abated. In support of their contention,

they argue that no evidence was presented to establish violations of lewd conduct or obscenity statutes after December 15, 1970. The contention is without merit.

In the first place, evidence was introduced at the trial reporting a performance at the Sarong Gals on or about January 3, 1973, less than two weeks before the trial date, from which the trial court could conclude that the nuisance was continuing.

In the second place, once the People presented evidence to show that lewd acts had taken place at the Sarong Gals, it was incumbent upon appellants to present evidence showing that the nuisance had been abated. (See *People* v. *Goddard*, 47 Cal.App. 730, 734 [191 P. 1012]; *People* v. *Macy*, 43 Cal.App. 479, 483 [184 P. 1008]; *People* v. *Dillman*, 37 Cal.App. 415, 419-420 [174 P. 951].) It is a maxim of jurisprudence that "[a] thing continues to exist as long as is usual with things of that nature." (Civ. Code, § 3547.) Appellants' reliance on *People* v. *Goddard*, *supra*, is misplaced. In *Goddard*, there was clear and uncontradicted evidence to show that the persons occupying the premises for immoral purposes vacated the premises three days before the filing of the complaint. No similar showing was made here.

### III

Appellants contend that, in view of our prior decision, the People were only entitled to obtain a permanent injunction as broad as that of the preliminary injunction. Appellants in essence argue that since our prior opinion concluded that "the prohibition of nude dancing of any sort is directed to protected expression," the court is precluded from granting a permanent injunction precluding nude dancing. We do not agree.

Our decision striking part "c" of the preliminary injunction—enjoining defendants from conducting any performance in which the performer's genitalia or anus were visible to any other person—was compelled by *In re Giannini*, *supra*, 69 Cal.2d 563, which held that "topless" dancing is conduct protected under the First Amendment. The Supreme Court, however, in a recent opinion overruled *In re Giannini*. (*Crownover* v. *Musick*, 9 Cal.3d 405, 431 [107 Cal.Rptr. 681, 509 P.2d 497].) In so doing, it nullified that portion of our prior opinion which rested on *In re Giannini*. (See 6 Witkin, Cal. Procedure (2d ed.) pp. 4568-4570.)

Appellants finally contend that the abatement order is overbroad and impinges upon their First Amendment right to present nonlewd dancing exhibitions at the Sarong Gals. Of course, just as a court order

for the incarceration of a convicted lawbreaker impinges on all sorts of constitutional rights, so does the abatement order. The order shutting down the property except for limited uses is specifically authorized, however, by Penal Code, section 11230 which permits the "closing of the [offending] building . . . against its use for any purpose . . . for a period of one year, . . ." The question is, therefore, not whether the order impinges on constitutionally guaranteed rights, but whether the statute constitutes a permissible exercise of the state's police power. (Cf. *Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 530 [20 Cal.Rptr. 638, 370 P.2d 342].)

The purpose of red light abatement proceedings is to abate a nuisance. Abatement of nuisances is a long established and well recognized exercise of the state's police power. (*Board of Supervisors* v. *Simpson,* 36 Cal.2d 671, 675 [227 P.2d 14]; *People* v. *Casa Co.,* 35 Cal.App. 194 [169 P. 454]; *People* v. *Barbiere,* 33 Cal.App. 770, 775-776 [166 P. 812].) The provision in Penal Code, section 11230 authorizing closing of the offending property to all uses for a period of one year, while harsh, is constitutionally permissible. The Legislature could, and presumably did, consider the alternative of constant police surveillance of the offending premises too burdensome to the community. It is to be remembered that red light abatement proceedings are directed against the offending property itself. Their purpose, it has been said, "is to effect a reformation in the property itself." (*People* v. *Bayside Land Co., supra,* 48 Cal.App. at p. 261.) Thus, while appellants are arguably denied their right of First Amendment expression to some extent, they are denied such right only upon the specific property here involved and only for a limited period of time. They are in the meantime free to exercise their First Amendment rights at any other place. Moreover, appellants' restricted First Amendment rights are penumbral at best. The right to present nonlewd dancing for commercial purposes in a beer bar is hardly to be equated with the right to hold a town hall meeting. (See *Crownover* v. *Musick, supra,* 9 Cal.3d at pp. 424-426.) Thus, the interference with appellants' right to free expression is limited and easily overbalanced by the state's substantial interest in abating public nuisances.

The judgment is affirmed.

Gardner, P. J., concurred.

**KERRIGAN, J.**—I dissent.

The abatement order directing the sheriff to remove all the fixtures, equipment and musical instruments from the subject property and to close

the building so as to deprive the owner and lessee of any use thereof for any purpose for a period of one year constitutes a flagrant violation of the First Amendment.

The Red Light Abatement Law states that any place used for the purpose of illegal gambling, assignation, or prostitution is a public nuisance which may be abated. (Pen. Code, § 11225.) The act also may be used to abate continuing acts of lewdness. (*People* ex rel. *Hicks* v. *Sarong Gals,* 27 Cal.App.3d 46, 49-50 [103 Cal.Rptr. 414].) Once the nuisance is established to the satisfaction of the court, any movable personal property therein (including musical instruments) utilized in conducting, maintaining or abetting the nuisance may be removed and the building closed and the use thereof *for any purpose* prohibited for a period of one year. (Pen. Code, § 11230.)

A governmental regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restrictions on alleged First Amendment freedoms are no greater than are essential to the furtherance of that interest. (*Crownover* v. *Musick,* 9 Cal.3d 405, 423, 427-428 [107 Cal.Rptr. 681, 509 P.2d 497], cert. den., 415 U.S. 931 [39 L.Ed.2d 489, 94 S.Ct. 1443].)

Although obscenity does not come within the ambit of protection afforded to speech by the First Amendment and the states remain free to regulate and suppress obscenity through the regulation of police power, the state is not free to adopt whatever procedure it pleases for dealing with obscenity without regard to possible consequences for constitutionally protected speech. (*Flack* v. *Municipal Court,* 66 Cal.2d 981, 985-989 [59 Cal.Rptr. 872, 429 P.2d 192].) Obviously, the owner or occupier of a building has the right to present entertainment, including dancing, provided the same is not lewd or obscene, and the government may not suppress that kind of expression.

The abatement order made herein not only bans lewdness but *all* First Amendment activities for a period of one year. Prohibiting the use of the property for any purpose amounts to over-kill. In an endeavor to cut away lewdness and obscenity, the government has deprived the owner and occupier of all rights to operate the property for legitimate purposes. (See *Weaver* v. *Jordan,* 64 Cal.2d 235, 245 [49 Cal.Rptr. 537, 411 P.2d 289].)

It can hardly be claimed that a total ban on entertainment and other lawful use is only an incidental limitation on First Amendment freedoms.

Despite the fact that the instruments and fixtures are property adaptable to use for legitimate and permissible expression, the statute authorizes removal. Similarly, the closing of the building for any purpose cannot be constitutionally sanctioned. The objective of the state to control lewd entertainment can be accomplished by a much narrower regulation. (See *Weaver* v. *Jordan, supra,* 64 Cal.2d 235, 245.) Section 11230 of the Penal Code should be struck down. A prior restraint on legitimate expression cannot be tolerated under the Constitution.

I would reverse that portion of the judgment which orders the sheriff to sell the personal property and to close down the premises for one year.

Appellants' petition for a hearing by the Supreme Court was denied December 11, 1974. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.