No. 42,829

STATE OF KANSAS, *Appellee*, v. A QUANTITY OF BOOKS, HAROLD THOMPSON and ROBERT THOMPSON, d/b/a P-K NEWS SERVICE, *Appellants*.

(379 P. 2d 254)

Opinion filed March 2, 1963.

*Robert A. Schermerhorn*, of Junction City, and *Stanley Fleishman*, of Hollywood, California, argued the cause and *C. L. Hoover* and *William R. King*, of Junction City, were with them on the briefs for the appellants.

*William M. Ferguson,* attorney general, argued the cause and *Robert E. Hoffman,* assistant attorney general, and *William Clement,* county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: On July 24, 1961, William M. Ferguson, attorney general of Kansas, brought an action under the new statute which had recently been passed by the Kansas legislature in relation to obscene books and writings. He thereupon caused to be filed before the district judge in Geary county at Junction City, the county seat, an information setting out that the P-K News Service of that city had in stock and possession a quantity of paper-back books which were named in the information. We are told that the judge was given seven copies of the books for perusal before issuing the warrant for seizure. The judge's remarks about his reading of the books may be found in the transcript of the proceedings of July 25, 1961. The court did not delay in issuing the warrant under the Laws of 1961, ch. 186, sec. 4. (Now also found in G. S. 1961 Supp. 21-1102c.)

Thereafter, the sheriff of Geary county was given a search warrant and notice of hearing. Harold Thompson and Robert Thompson, owners of the P-K News Service, were given notice to appear on August 7, 1961 to determine whether the books seized were obscene. After serving the warrant, the sheriff reported and certified that he had found 1715 individual copies of the paper-back books.

On August 7, 1961, the interveners—now appellants—filed a motion to quash. The court heard arguments on this motion on August 7, and on August 11, denied the motion to quash. On August 8, the appellants moved for a continuance. This motion was granted and the court continued the case until September 14. On September 6, appellants moved that they be granted a jury trial. This was denied. Thereafter, the matter was tried to the court, and the court handed down a short memorandum opinion on September 19, 1961. We are setting out the opinion here as the clearest way of showing what the trial court thought about the case:

"MEMORANDUM DECISION
(Filed September 19, 1961)

"The sole question before the Court at this time is whether the books in question, as shown in the warrant issued by this Court, are obscene literature as defined in Chapter 186 of the Session Laws of the State of Kansas, 1961.

"The test to be employed under our law is taken directly from an instruction approved by the Supreme Court of the United States in the case of Roth

vs. the United States, which was decided together with Albert vs. State of California in 354 U. S. 476, 1 L. Ed. 2d 1498 [sic], 77 S. Ct., 1304. This Court must then look to these two decisions.

"The test of obscenity as laid down by the Court in the Roth case is as follows: 'Whether to the *average* person, employing *contemporary community standards,* the *dominant theme* of the material taken as a whole appeals to prurient interests.'

"The four words or phrases italicized above form the yardstick by which these books are to be judged. The first two are impossible as to ascertainment to a certainty. The 'dominent theme' of the book is antonymous to 'isolated excerpts'. Webster's New World Dictionary of the American Language, College Edition (1960), defines 'prurient' as follows: '1. Having lustful ideas or desires. 2. Lustful, lascivious, lewd: as, prurient longings. 3. Itching.'

"The Court approved as a further guide the definition of obscenity in the Model Penal Code, Section 207. 10(2), as follows: 'A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, *i. e.,* shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond the customary limits of candor or representation of such matters.'

"This Court has further kept in mind, based upon the above decisions, that sex and obscenity are not synonomous.

"This Court would draw a line as between the books in question here and the books introduced by the intervener, that being the purpose for which the books were written. In the case of the books introduced into evidence by the intervener, the core of the said books would seem to be the plot, with sex being subservient thereto and only acting as an agent to carry the plot to its intended conclusion, while in the books in question, the core would seem to be that of sex, with the plot, if any being subservient thereto.

"This Court has made the rule of the Roth case, and the test as set forth in the law in question, operative in this case in the following manner: If the books in question showed this Court that their dominant purpose was calculated to effectively incite sexual desires, and the Court further believed that they would have this effect on the average person residing in this community, then they are not entitled to the protection of the Amendment to the Constitution. This Court believes that the books under indictment here fall within the last statement and are not entitled to the said protection.

"It Is Therefore Ordered, Adjudged, and Decreed that the books in question are found to be in violation of Chapter 186 of the Session Laws of the State of Kansas, 1961, and shall be turned over to the Sheriff of Geary County to be destroyed by said sheriff upon the further order of this Court."

Appellants have now appealed to this court and are asserting all of the matters urged to the trial court.

Turning to the statute (G. S. 1961 Supp. 21-1102a) we readily see that the first section contains a definition of obscenity. We believe that the test for obscenity which is provided is adequate and we are applying it in this case.

It would seem that the vital question is whether these seized books were in fact obscene. The test for obscenity is not easy to state. It is said that Irvin S. Cobb was once called as an expert witness in a case of claimed obscenity. He was asked to give a definition of obscenity. His answer was: "If the depth of the dirt exceeds the breadth of the wit, then in my opinion the book is obscene."

Appellants argue that there was no evidence showing comparison of the seized books with other books in common circulation. The trial court did point out the difference between the seized books and some twenty-nine others that were taken from the Junction City public library.

The attorney general's brief contains a section in which each of the thirty-one seized books is listed by name and then the pages upon which obscenities occur are given along with a short description. We have checked the cited pages and find that they well bear out the descriptions. We would certainly agree that the books as a whole come within the definition found in paragraph 4 of the syllabus in *Roth v. United States*, 354 U. S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304, where it is said:

"(*a*) Sex and obscenity are not synonymous. Obscene material is material which deals with sex in a manner appealing to prurient interest—*i. e.*, material having a tendency to excite lustful thoughts." (p. 477)

We are of the opinion that the seized books are in fact hard core pornography. We feel certain that young G. I.'s from Fort Riley— many of whom frequent Junction City—would be of the same opinion. We believe that the seized books are obscene by the definition found in the Roth case, or by the definition found in the statute or by any other definition.

We shall now answer briefly certain other matters. First of all, obscenity is not protected by the First Amendment to the Constitution of the United States nor is it protected by the due process clause of the Fourteenth Amendment nor, of course, under section 11 of our own Bill of Rights to the Constitution of Kansas, see *Roth v. United States*, supra.

The present case is not a criminal case but a civil case. The appellants are claiming that they had a right to a jury trial. If that were true, appellants would have to point out what form of action at common law formed the basis for the present suit. Both the provision in section 5 of the Bill of Rights of the state constitution

which reads: "The right of trial by jury shall be inviolate" and Amendment VII of the federal constitution preserve only the right of trial by jury as it existed at common law. This action grows out of a statute, and we know of no basis for it at common law. Therefore, there was no right to a jury trial.

We believe that the currently seized books are only attempts to carry pornography to the "nth" degree; that smut and obscenities seem to be the chief purpose of the books; that the story—what there is of it—is simply a framework upon which to hang the pornography. Certainly there is no literary merit in the thirty-one books seized. They are trash.

Having considered all matters raised in this case, the order will be made to affirm the trial court's ruling. It is so ordered.

PRICE and ROBB, JJ., dissent.