No. 47,817

STATE OF KANSAS, *Appellant* and *Cross-Appellee,* v. A MOTION PICTURE ENTITLED "THE BET," et al., and A MOTION PICTURE ENTITLED "THE SEXUAL THERAPIST," et al., *Appellees* and *Cross-Appellants.*

(547 P. 2d 760)

Opinion filed March 6, 1976.

*Randy L. Baird,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Gene M. Olander,* district attorney, were with him on the briefs for appellant and cross-appellee.

*John H. Weston,* of Hollywood, California, argued the cause, and *John A. McKinnon,* of Topeka, was with him on the briefs for Las Vegas Cinema, Inc., appellees and cross-appellants.

*Charles Rooney, Jr.* and *William R. Brady,* of Topeka, were on the brief for Dickinson, Inc., appellee.

The opinion of the court was delivered by

FROMME, J.: Two actions were brought by the state of Kansas on the relation of the district attorney to enjoin the public showing of obscene films, to abate the films and other personal property used in promoting obscenity, to obtain an order padlocking the theater where the films had been exhibited, and to allow a reasonable attorney fee and court costs. The first action was based on the public showing of four films, viz., "The Bet", "Flossie", "The King", and "The Fashion Jungle". The second action concerned the public showing of two films, viz., "The Sexual Therapist" and "Three Pennies". The actions were consolidated by agreement of the parties.

The actions were filed under the provisions of K. S. A. 22-3901, *et seq.,* which provides for the abatement of common nuisances. K. S. A. 22-3901 provides:

"The following unlawful activities and the use of real and personal property in maintaining and carrying on such activities are hereby declared to be common nuisances:

"(*a*) Commercial gambling;

"(*b*) Dealing in gambling devices;

"(*c*) Possession of gambling devices;

"(*d*) Promoting obscenity;

"(*e*) Promoting prostitution;

"(*f*)  Habitually promoting prostitution;

"(*g*)  Violations of any law regulating narcotic or dangerous drugs.

"Any real property used as a place where any such activities are carried on or permitted to be carried on and any effects, equipment, paraphernalia or other personal property designed for and used on such premises in connection with such unlawful activities are subject to injunction and abatement as in this article provided."

The procedure outlined in K. S. A. 22-3902 was followed and, after an adversary judicial hearing in which the films were viewed by the court, the four films included in the first action were ordered seized and held as evidence. It was found that there was probable cause to believe the films were obscene and should be held as evidence. The two films included in the second cause of action were no longer in the possession of the theater owners and were not seized or viewed. No request was made by counsel for defendants to make copies of the films or withdraw the four films for the purpose of exhibition pending final decision on the merits. (See *Heller v. New York*, 413 U. S. 483, 37 L. Ed. 2d 745, 93 S. Ct. 2789.)

The instant action was tried to the court. At the trial defendants offered no evidence and advanced no arguments on the issue of obscenity *vel non*. The defense rested on a motion for involuntary dismissal which challenged the validity of the state statute defining obscene material (K. S. A. 21-4301 [2] [*a*] and [3]) on stated constitutional grounds.

After hearing the evidence introduced by the state, which included a showing of the four films and oral testimony concerning "The Sexual Therapist" and "Three Pennies", the court found that all six films were obscene within the broader definition of K. S. A. 21-4301 and as construed more narrowly to conform to the constitutional requirements explicated in *Miller v. California*, 413 U. S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, reh. den. 414 U. S. 881, 38 L. Ed. 2d 128, 94 S. Ct. 26.

The trial court entered judgment permanently enjoining any future showing and exhibition of these six films in Kansas and ordered Las Vegas Cinema, Inc., d/b/a Vegas Cinema to pay all costs of the action. The court refused to abate the equipment and personal property used in the exhibition of films in the theater. It refused to grant a padlock order on the theater property. It refused to order defendant to pay a reasonable attorney fee to the district attorney and it ordered the four films (seized as evidence) be returned to Las Vegas Cinema, Inc.

The state has appealed from those portions of the court's order

which denied the abatement of equipment and personal property, which refused to grant the padlock order, which refused to order destruction of the films, and which denied allowance of attorney fees to the district attorney. The defendant has cross-appealed from those portions of the court's order which permanently enjoined the exhibition of the films in Kansas and which construed K. S. A. 21-4301 (2) (*a*) and (3) as limited by the constitutional standards for obscene materials set forth in *Miller v. California,* supra.

In order to place the questions raised by this appeal and cross-appeal in proper perspective it might be well to consider some of the history of the decisions in this general area. The First Amendment to the United States Constitution provides that congress shall make no law abridging the freedom of speech or of the press. This amendment was made applicable to the states through the Fourteenth Amendment which specifies that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States. The United States Supreme Court in a plethora of decisions has held that First Amendment rights apply to practically all forms of the written and spoken word including performances, sound communications and graphic materials. However, a majority of the members of that court hold that *obscene materials* do not enjoy the protection of First Amendment rights. (*Roth v. United States,* 354 U. S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304.) Therefore the states retain the right to prohibit the public display of obscene materials. The difficulty in this area comes from an inability of the states to lay down definitive standards to determine what is obscenity which will meet the changing standards of the United States Supreme Court.

Kansas has unsuccessfully attempted to provide censorship for obscene films which are to be shown publicly by the motion picture industry. A censorship statute passed by the legislature in Kansas was struck down by the high court. (See *Holmby Productions, Inc. v. Vaughn,* 177 Kan. 728, 282 P. 2d 412, rev. 350 U. S. 870, 100 L. Ed. 770, 76 S. Ct. 117.) Efforts to provide for the seizure and destruction of publications deemed to be obscene and immoral have met similar fates. (See *State v. A Quantity of Copies of Books,* 191 Kan. 13, 379 P. 2d 254, rev. 378 U. S. 205, 12 L. Ed. 2d 809, 84 S. Ct. 1723; and *State, ex rel., v. A Quantity of Copies of Books,* 197 Kan. 306, 416 P. 2d 703, reversed without opinion 388 U. S. 452, 18 L. Ed. 2d 1314, 87 S. Ct. 2104.)

Much of the difficulty in this area comes from the vacillation of the high court in this sensitive area where First Amendment rights are considered in relation to the control of obscenity. This is clearly reflected in the various decisions of the United States Supreme Court.

In 1957, the high court handed down *Roth v. United States,* supra. In *Roth* the court rejected a claim that even obscene materials were protected by the First Amendment, held that obscenity was not within the area of constitutionally protected speech or press and reaffirmed its prior cases which recognize that the states have a legitimate interest in prohibiting dissemination or exhibition of obscene material. The court articulated a new test for obscenity. The test defined in *Roth* lasted only nine years.

In 1966, the high court again attempted a more definitive test for obscenity as set forth in *Memoirs v. Massachusetts,* 383 U. S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975. During the seven years that followed *Memoirs,* many state legislatures, including the legislature of Kansas, upgraded their obscenity statutes by adopting those constitutional guidelines articulated in *Roth* and *Memoirs.*

In 1973, the United States Supreme Court handed down *Miller v. California,* supra. In *Miller,* the *Roth-Memoirs* test for obscenity was revised again and a more definitive test for obscenity was articulated. In *Miller* it is held:

(1) Obscene material is not protected by the First Amendment;

(2) The proper First Amendment standards to be applied by the states in determining whether particular material is obscene and subject to regulation, are

(a) Whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest,

(b) Whether the work depicts or describes in a patently offensive way sexual conduct specifically defined by the applicable state law, as written or authoritatively construed, and

(c) Whether the work taken as a whole lacks serious literary, artistic, political or scientific value;

(3) There is no requirement that the material must be shown to be "utterly without redeeming social value" (as previously indicated in *Memoirs v. Massachusetts,* supra);

(4) The state obscenity law, as written or construed, must specifically define the sexual conduct as to which depiction or descrip-

tion is proscribed and provide fair notice as to what public and commercial activities would bring prosecution; and

(5) Obscenity is to be determined by applying "contemporary community standards", not "national standards".

It is within the *Miller* guidelines and the foregoing historical frame of reference that we examine the present questions raised in this appeal.

The definition of obscene material or performance in our current statute reads:

"Any material or performance is 'obscene' if, considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and the material is patently offensive and utterly without redeeming social value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be intended for distribution to children or any other especially susceptible audience.

" 'Material' means any tangible thing which is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound or other manner.

" 'Performance' means any play, motion picture, dance or other exhibition performed before an audience.

"It is a defense to a prosecution for obscenity that the persons to whom the allegedly obscene material was disseminated, or the audience to an allegedly obscene performance, consisted of persons or institutions having scientific, educational, governmental or other similar justification for possessing or viewing the same." (K. S. A. 21-4301 [2] [a] [b] [c] and [3].)

As indicated in the note of the Judicial Council set forth in the annotation following the statute, the statute was drafted in 1968 in an attempt to meet the constitutional tests laid down by the United States Supreme Court in prior decisions, *i. e.*, the *Roth-Memoirs* test.

In *Miller v. California,* supra, the most significant difference in the formulation of new constitutional tests for obscenity is the requirement that sexual conduct, the depiction or description of which is prohibited, must be "specifically defined by the applicable state law, as written or authoritatively construed." Although the court declined to propose regulatory schemes, it set forth the following examples of what a state statute could define for regulation under the police power:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." (413 U. S. p. 25.)

Our Kansas statute defining obscene material, with the Judicial Council note attached, manifests a clear legislative intent to proscribe obscenity to the extent consistent with constitutional limitations. Obscene materials, for the purposes of state government regulation, is no longer meaningfully defined except within constitutional guidelines explicated by the United States Supreme Court. The definition of such term "obscene material" in our state statute appears overbroad and is therefore susceptible of authoritative judicial construction conformable with the guidelines and authorized regulatory pattern articulated in *Miller* and other federal cases.

This court has on previous occasions seen fit to construe and limit criminal statutes in such a way as to uphold their constitutionality by reading judicial requirements into statutes which otherwise were overbroad.

K. S. A. 21-2437 (relating to possession of burglary tools) was construed to require proof of intent to employ tools in the course of burglarious episodes, whenever and wherever opportunity might present itself. In *State v. Hart*, 200 Kan. 153, 434 P. 2d 999, we state, "So construed, we have no hesitancy in holding the statute to be free of constitutional infirmity. . . ." (200 Kan. p. 158.)

K. S. A. 1971 Supp. 21-3419 (relating to terroristic threats) was construed to proscribe a communicated intent to inflict physical or other harm on any person or on property and reduce a person to an extreme fear that agitates body and mind. In *State v. Gunzelman*, 210 Kan. 481, 502 P. 2d 705, 58 A. L. R. 3d 522, we hold that given such limiting definitions for the words "threat" and "terrorize" the statute survives constitutional challenge. (Syl. ¶ 4.)

Construction of this sort, moreover, was invited by the United States Supreme Court in *Miller* in which the Chief Justice speaking for a majority said:

"We do not hold . . . that all States . . . must now enact new obscenity statutes. Other existing state statutes as construed heretofore or hereafter, may well be adequate. [Citation omitted]" (413 U. S. 24, note 6, 37 L. Ed. 2d 430, 93 S. Ct. 2615.)

The high court has itself adopted this course of judicial construction of statutes as noted in *United States v. 12 200-Ft. Reels of Film*, 413 U. S. 123, 37 L. Ed. 2d 500, 93 S. Ct. 2665, and in *United States v. Thirty-seven Photographs*, 402 U. S. 363, 28 L. Ed. 2d 822, 91 S. Ct. 1400, reh. den. 403 U. S. 924, 29 L. Ed. 2d 702, 91 S. Ct. 2221, with respect to federal statutes.

In at least nine other states the courts have held that their ob-

scenity statutes, though not couched in the language of *Miller*, should be judicially construed in a manner consistent with *Miller* and thereby evade constitutional challenge in the future. (See *State v. Papp*, 298 So. 2d 374 [Fla. 1974]; *People v. Heller*, 33 N. Y. 2d 314, 352 N. Y. S. 2d 601, 307 N. E. 2d 805; *State, ex rel., v. Vixen*, 35 Ohio St. 2d 215, 301 N. E. 2d 880; *State ex rel. Wampler v. Bird*, 499 S. W. 2d 780 [Mo. 1973]; *State v. J-R Distributors, Inc.*, 82 Wash. 2d 584, 512 P. 2d 1049; *Price v. Commonwealth*, 214 Va. 490, 201 S. E. 2d 798; *State v. Welke*, 298 Minn. 402, 216 N. W. 2d 641; *State v. Harding*, 114 N. H. 335, 320 A. 2d 646; and *State v. De Santis*, 65 N. J. 462, 323 A. 2d 489.)

We realize that to construe the statute to meet constitutional standards we may be subject to the accusation that we are invading the province of the legislature. However, after considering the manifest intention of the legislature when it passed K. S. A. 21-4301, *et seq.*, and our past difficulties in this area of regulating obscenity we feel fully justified in construing and limiting the present statute to meet constitutional standards. Such was the original intent of the Kansas legislature.

We now authoritatively construe and hold the word "obscene" is a word of constitutional meaning and, as used in K. S. A. 21-4301 and related statutes such as K. S. A. 22-3901, *et seq.*, regulating or prohibiting obscenity, it embraces materials and performances which are patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

A conviction may be had under our statutes if the trier of fact finds under the substantial evidence test:

(1) That the material depicts or describes in a patently offensive way sexual conduct as explicated above;

(2) That to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to the prurient interest in such matters; and

(3) That the material, taken as a whole, lacks serious literary, artistic, political, or scientific value.

The action with which we are presently concerned was filed by the district attorney under the abatement of common nuisance statutes (K. S. A. 22-3901, *et seq.*). Among the various activities declared to be common nuisances is "promoting obscenity". The statute provides that any real property where such activities are

carried on and any effects, equipment, paraphernalia designed for use on such premises are subject to injunction and abatement. Upon final judgment the premises may be padlocked and the personal property publicly destroyed. Upon final judgment for the state the defendant shall pay a reasonable attorney fee to the prosecuting attorney.

However, the constitutional mandates in the regulation of obscene material are more stringent and require a different treatment than the other six activities set out in K. S. A. 22-3901. This arises by reason of the constitutional rights of freedom of speech and press. (First Amendment Constitution of the United States and Constitution of the State of Kansas, Bill of Rights § 11.)

The line between speech guaranteed by the First Amendment and that which may be legitimately regulated, suppressed or punished is finely drawn and the separation of legitimate from illegitimate speech calls for sensitive tools. For this reason procedures adopted by states for dealing with obscene expression have been the subject of close judicial scrutiny. (*Marcus v. Search Warrant*, 367 U. S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708.) A state is required to observe stringent safeguards in the exercise of the right to prohibit obscene expression. The minimum constitutional standard required before there can be suppression of an expression alleged to be obscene is an independent judicial finding of probable cause that the expression is obscene and therefore not protected speech. (*A Quantity of Books v. Kansas*, 378 U. S. 205, 12 L. Ed. 2d 809, 84 S. Ct. 1723; and *Bantam Books, Inc., v. Sul'ivan*, 372 U. S. 58, 9 L. Ed. 2d 584, 83 S. Ct. 631.) Motion picture films are a form of expression within the shield of the First Amendment. (*Roaden v. Kentucky*, 413 U. S. 496, 37 L. Ed. 2d 757, 93 S. Ct. 2796.)

A system of regulation that permits suppression of speech or films in advance of actual expression may be deemed a prior restraint. In the recent decision *Southeastern Promotions, Ltd. v. Conrad*, 420 U. S. 546, 43 L. Ed. 2d 448, 95 S. Ct. 1239, the court examined principles applicable to a system of prior restraint:

". . . Prior restraints are not unconstitutional *per se*. [Citations omitted.] We have rejected the contention that the First Amendment's protection 'includes complete and absolute freedom to exhibit, at least once, any and every kind of motion picture . . . even if this film contains the basest type of pornography, or incitement to riot, or forceful overthrow of orderly government. . . .' [Citation omitted]

"Any system of prior restraint, however, 'comes to this Court bearing a

heavy presumption against its constitutional validity.' [Citations omitted.] The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of free-wheeling censorship are formidable. [Citation omitted.]" (420 U. S. pp. 558-559.)

In *Freedman v. Maryland*, 380 U. S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734, three procedural prerequisites were evolved respecting the suppression or seizure of materials or film alleged obscene without doing damage to the doctrine of prior restraint. In summary they are: (1) in each case the government must institute judicial proceedings whereby the material or film is seized or suppressed and it must bear the burden of proof of the obscenity; (2) the government-instituted proceeding must place the defendant exhibitor or seller on notice which films or publication sold or exhibited the government seeks to seize or suppress; and (3) the proceeding must provide prompt and final judicial determination of the obscenity of the film or material. Temporary restraints to preserve the status quo are authorized after an adversary hearing when followed by a prompt final determination of obscenity. (See *Paris Adult Theater I v. Slaton*, 413 U. S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628, reh. den. 414 U. S. 881, 38 L. Ed. 2d 128, 94 S. Ct. 27.)

It would appear that the Kansas procedure set forth in K. S. A. 22-3902 passes constitutional muster but other provisions of the act (Kansas nuisance abatement statute) as applied to obscenity may not meet constitutional muster in the area of punitive sanctions. K. S. A. 22-3904 states that if the existence of the nuisance of promoting obscenity is established upon final judgment the court may order real property closed and padlocked for a period of not less than three months nor more than two years. This provision has the effect of closing a building or structure against use for any purpose for a period of up to two years. The statute thus authorizes a prior restraint—*i. e.*, restraint of expression before it is communicated for the first time—as to any future publication, exhibition or expression from those premises whether obscene or not.

In a similar circumstance it was held that an injunction imposes an impermissible prior restraint on First Amendment rights where the injunction operates not to redress private wrongs but to sup-

press on the basis of previous publications, distribution in the future of literature of any kind. (See *Organization for a Better Austin v. Keefe*, 402 U. S. 415, 29 L. Ed. 2d 1, 91 S. Ct. 1575.)

Courts in other jurisdictions have condemned provisions of nuisance abatement statutes which authorize closure of premises upon a finding that obscenity has been exhibited or distributed on the premises. In *Sanders v. State of Ga.*, 231 Ga. 608, 203 S. E. 2d 153, defendant's bookstore was ordered permanently closed as a public nuisance following a finding by the lower court that obscene materials had been distributed from the premises. On appeal the Georgia Supreme Court held that the injunction closing the store and padlocking it as a public nuisance to be an impermissible prior restraint. The order necessarily halted the future sale and distribution of other printed material which may not be obscene, thereby precluding the application of the procedural safeguards enunciated in *Freedman v. Maryland*, supra. For this reason the court found that insofar as the nuisance abatement statute had been applied to authorize the closure of defendant's bookstore it is unconstitutional. The holding in *Sanders* was subsequently followed in *Mayor &c. of Savannah v. TWA*, 233 Ga. 885, 214 S. E. 2d 370.

In *Gulf States Theatres of La., Inc. v. Richardson*, 287 So. 2d 480 (La. 1973), the Louisiana Supreme Court held their nuisance abatement statute, which authorized padlocking premises from which obscenity had emanated for a one year period, was unconstitutional. The court found the statute to be a prior restraint violative of the First Amendment:

". . . [U]nder our statute there can be no expression of any kind—good or bad—emanating either from the premises or from the devices on the premises for a period of one year. This is the very essence of the prior restraint condemned by Blackstone, by our Bill of Rights, and by our jurisprudence. Of all the constitutional violations on the face of these statutes, the prior restraint imposed under R. S. 13:4717 is the most offensive.

"This particular section of the Revised Statutes does restrict expression not yet found to be an offense and not yet uttered. It is a classic example of prior restraint of speech and expression and is violative of federal and state constitutions." (287 So. 2d pp. 491, 492.)

*Gulf States Theatres* was followed in *Giarrusso v. New Orleans Book Mart, Inc.*, 304 So. 2d 734 (La. App. 1974).

The Alabama Supreme Court recently ruled that its "Red Light Abatement Act" which authorized padlocking of premises found to be a public nuisance for one year could not be constitutionally

applied to close a theater which had exhibited obscene motion pictures, *General Corp. v. Sweeton,* 294 Ala. 657, 320 So. 2d 668 (1975).

Other jurisdictions have found that public nuisance doctrines cannot be constitutionally applied where First Amendment guarantees are restricted in advance of publication. (See *Mitchem v. State, ex rel. Schaub,* 250 So. 2d 883 [Fla. 1971], and *State, ex rel., Blee v. Mohney Enterprises,* 154 Ind. App. 244, 289 N. E. 2d 519.)

In the present case the state argues that the purpose of the nuisance abatement statute as applied to obscenity is not to prevent the showing of films but to provide a punishment for past transgressions. The state points out that such statutes have been upheld under constitutional challenge where property has been used to further past illegal activity in areas of gambling, prostitution, smuggling, liquor distribution and drug trafficking. The state relies on *People ex rel. Hicks v. Sarong Gals,* 42 Cal. App. 3d 556, 117 Cal. Rptr. 24. In *Sarong Gals* the court of appeals upheld the nuisance abatement statute as a permissible exercise of the state's police power.

We do not find *Sarong Gals* persuasive. The right to present lewd dancing for commercial purposes in a beer hall where customers participate on the stage with the entertainers can hardly be equated to First Amendment rights of free speech or press.

Where property has been used to further illegal activity in areas of gambling, prostitution and drug trafficking such property may be controlled under the exercise of the police power and can be legally destroyed so as not to offend again. (*Gulf States Theatres of La., Inc. v. Richardson,* supra.) Although the regulation of obscene expression is unquestionably a legitimate matter for state control, it does not follow that the doctrine of public nuisance can be constitutionally applied to obscenity if it has the effect of imposing prior restraints upon freedom of speech or press. (*General Corp. v. Sweeton,* supra.)

Orders involving the neutral premises and equipment used in a movie house issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pinpointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field the state may not employ means that broadly stifle fundamental personal rights when the end can be more narrowly achieved. (*Shelton v. Tucker,* 364 U. S. 479, 488, 5 L. Ed. 2d 231, 237, 81 S. Ct. 247.)

Finally the state argues that the padlocking order authorized by K. S. A. 22-3904 constitutes only an incidental restraint which does not preclude the exercise of appellees' freedom of speech in any place other than the subject property. An analogous argument was advanced and rejected in *Southeastern Promotions, Ltd. v. Conrad,* supra. There the court held that municipal authorities practiced impermissible restraint of expression by refusing to lease a municipal auditorium to the producers of a stage play found by the authorities to be obscene. It was argued that no prior restraint was involved because the producers could have rented another privately owned theater in the city. The court stated:

". . . Even if a privately owned forum had been available, that fact alone would not justify an otherwise impermissible prior restraint. '[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.' . . ." (420 U. S. 556.)

The Kansas nuisance abatement statute ( K. S. A. 22-3901, *et seq.*) as applied to promoting obscenity is overbroad in authorizing a padlock order on any house, building, room or other structure and in authorizing the destruction of equipment, seats or other neutral property designed for use in showing films. Such provisions of the statute are unconstitutional as a prior restraint of freedom of expression, speech and press under the First Amendment to the Constitution of the United States and under the Constitution of the State of Kansas, Bill of Rights § 11. Items of neutral equipment which may be used in the future for legitimate forms of expression, such as movie projectors and theater seats, may not be destroyed because of past transgressions of obscenity laws. ( See *Gulf States Theatres of La., Inc. v. Richardson,* supra; see also *State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448, 417 P. 2d 255.) Our holding in this respect does not apply in cases involving the other six proscribed activities set forth in K. S. A. 22-3901, *i. e.,* commercial gambling, dealing in gambling devices, possession of gambling devices, promoting prostitution, habitually promoting prostitution and violations of any law regulating narcotics or dangerous drugs.

In our present case the constitutional limitations imposed arise by reason of the theory of prior restraints. The films now in possession of this court were viewed by the trial court applying the *Miller* standards. It made all of the requisite findings upon which it was concluded from the evidence the six films were obscene.

This court has viewed portions of the films and by any standards, including those set forth in *Miller*, the films are obscene. Since the films were dealt with under the abatement of common nuisance statute and the final adjudication of obscenity was under the proper *Miller* standards, we hold the injunction against showing the films was properly granted. We go one step further than the trial court and direct the trial court to order the four films publicly destroyed as is authorized by K. S. A. 22-3904 (2). The films are not neutral items and they have been adjudged obscene after all proper procedural safeguards have been met.

As to the allowance of attorney fees, K. S. A. 22-3904 (3) provides:

"Upon final judgment for the state the court shall adjudge that the defendant pay all costs, including a reasonable fee, to be fixed by the court, to be paid to the prosecuting attorney. . . ."

The statute uses the word "shall" when referring to the allowance of an attorney fee. The final judgment in this action is for the state, limited only as to the constitutional mandate on prior restraint of First Amendment rights. The prosecuting attorney is entitled to a reasonable attorney fee to be fixed by the trial court.

By way of summary we hold:

(1) The definition of obscenity in K. S. A. 21-4301, as construed and applied by the trial court and by this court meets the constitutional standards explicated in *Miller;*

(2) The portion of the statute providing for the abatement of common nuisances (K. S. A. 22-3901, *et seq.*) which permits punitive sanctions against neutral articles, such as the premises and theater equipment, is overbroad when dealing with the promotion of obscenity and is authoritatively construed to be limited to the remaining six activities set forth in the statute;

(3) The padlock order and destruction of effects, equipment, paraphernalia or other personal property designed for and used on such premises may be properly ordered in those actions relating to all unlawful activities listed as common nuisances in K. S. A. 22-3901, except promoting obscenity;

(4) Future showing of the named films in Kansas was properly enjoined;

(5) The four obscene films in the custody of the court should by order of the court on remand be publicly destroyed as provided by K. S. A. 22-3904 (2), and

(6) The trial court is directed to allow a reasonable attorney

fee for prosecuting the action, determine the costs and tax the same to the defendant, Las Vegas Cinema, Inc.

Accordingly the judgment of the trial court is affirmed in part, reversed in part, and the case is remanded for further consideration in accordance with the opinions expressed herein.

PRAGER, J., dissenting: I respectfully dissent from those portions of the majority opinion and the syllabi which construe K. S. A. 21-4301 so as to read into that statute the so-called *Miller* standards for determining obscenity. I also disagree with the majority's decision to destroy the films in question and to award attorney fees to the prosecution.

The conduct involved here terminated on June 19, 1973. *Miller v. California,* 413 U. S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, was decided by the United States Supreme Court on June 21, 1973. That decision modified the constitutional standards enunciated by the court with regard to obscenity in *Memoirs v. Massachusetts,* 383 U. S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975, and *Roth v. United States,* 354 U. S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304. The court noted in *Miller* that it was not necessarily requiring the states to make wholesale changes in their obscenity statutes. Rather it declared:

"Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct *specifically defined by the regulating state law, as written or construed.*" (p. 27.) (Emphasis supplied.)

By reading the *Miller* standards into 21-4301 the majority is treading on thin judicial ice in two respects. The majority concedes our statute does not contain the *Miller* standards. The construction given 21-4301 by the majority results in judicial legislation and its application to these appellees creates an *ex post facto* law. Simply stated, the majority has rewritten the provisions of a penal statute to make it conform to the requirements of a decision of the United States Supreme Court. The task of writing an obscenity statute is for the legislature, not this court. Even if I were to concede that we could so construe 21-4301, I would not concede that it could be retroactively applied to these appellees. Elementary principles of due process require that a defendant receive prior notice as to the conduct proscribed by a penal statute. It may be argued that since no penal sanctions have been imposed here that there is no problem with retroactively applying *Miller.*

This argument overlooks the fact that the court has ordered the films destroyed and has ordered appellees to pay the costs of this action including attorney fees.

The majority notes that other jurisdictions have adopted the view presented in the majority opinion. Likewise, the view expressed in this dissent has been adopted and followed by numerous jurisdictions. *See, People v. Tabron,* ____ Colo. ____, 544 P. 2d 372; *Mahney v. State,* 261 Ind. 56, 300 N. E. 2d 66 (on remand); *State v. Wedelstedt,* 213 N. W. 2d 652 (Iowa); *State v. Shreveport News Agency, Inc.,* 287 So. 2d 464 (La.); *Commonwealth v. Horton,* 310 N. E. 2d 316 (Mass.); *Commonwealth v. MacDonald,* 347 A. 2d 290 (Pa.); and *Art Theater Guild, Inc. v. State ex rel. Rhodes,* 510 S. W. 2d 258 (Tenn.). The rationale for these decisions is similar to that which I have stated above—the amendment of statutes is for the legislature, not the courts.

Further comment is required with regard to the ordered destruction of the films and the award of attorney fees. The majority go one step further than the trial court and order the films destroyed pursuant to K. S. A. 22-3904 (2). The problem with this order is that the statute vests the trial court with a broad discretion in the area of destruction of equipment and materials subject to 22-3901 *et seq.* The record does not establish an abuse of that discretion nor does the majority find an abuse of discretion. The state maintains only that destruction would be a good punitive measure and that absent destruction the films may be freely shown in other states. What happens in other jurisdictions with these films is of no concern to us. The order of the majority is a blatant usurpation of the trial court's discretion and goes against all appellate rules for review of discretionary matters. Furthermore, having already stated that an improper construction has been placed on our obscenity statute, destruction is all the more unwarranted and improper.

Finally, I find no authority for the award of attorney fees. The majority seem to find such authority in K. S. A. 22-3904 (3). This simply does not apply. The trial court and this court are in agreement that the padlock order sought constitutes an impermissible prior restraint. That appears to be the only application of 22-3901 *et seq.* relevant to this action. How, then, can the majority utilize these sections to award attorney fees to the prosecution? The simple answer is the facts and circumstances of this case do not logically

or legally allow an inapplicable nuisance statute to form the basis for an award of attorney fees in a case wherein the sole issue is a determination of obscenity.

KAUL, J., joins in the foregoing dissent.